Peter J. **BRENNAN**, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

v.

**GENERAL TELEPHONE COMPANY OF FLORIDA**, Defendant-Appellant.

No. 73-1824.

United States Court of Appeals, Fifth Circuit.

Nov. 30, 1973.

Howard K. Rutherford, James F. Bell, Tampa, Fla., for defendant-appellant.

Beverley R. Worrell, Regional Solicitor, U. S. Dept. of Labor, Atlanta, Ga., Richard F. Schubert, Solicitor of Labor, Philip A. Yahner, Bobbye D. Spears, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellee.

Before THORNBERRY, SIMPSON and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

This case is before us for the resolution of a single issue. We must decide whether section 304(a) of the Consumer Credit Protection Act[1] allows an employer to fire an employee for garnishments that occurred prior' to the Act's effective date. We believe that it does, and we reverse.

The facts of the case are undisputed. Prior to the Act's effective date (July 1, 1970), employee Long's wages had been garnisheed three times for three separate indebtednesses. In October 1971 her wages were garnisheed again, and a month later General Telephone terminated her employment because of her four garnishments. Thus when Ms. Long was fired in November 1971, her wages had been subjected to garnishment once since July 1, 1970, and four times (for three debts) in the last thirty months.

Because Ms. Long had been subjected to garnishment only once since the effective date of the Act, which prohibits discharges on the grounds of garnishment for one debt, appellee claims her discharge was in violation of the Act. The disputed section provides:

> No employer may discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness.

Consumer Credit Protection Act § 304(a), 15 U.S.C.A. § 1674(a).

We perceive the plain meaning of this passage to be that garnishment is not an adequate reason for firing an employee with but one indebtedness on his record, and it is inconsequential whether the indebtedness and garnishment occurred either before or after the Act's effective date. We find nothing on the face of this passage to indicate that Congress intended to wipe the slate clean of all garnishments suffered prior to July 1, 1970. It seems to us that Congress could easily have specified that result if it had been desired. It is appellee's task to convince us that "garnishments" as used in section 304 means "garnishments after July 1, 1970."

In finding for appellee the trial court said the plain language of the Act precludes consideration of pre-Act garnishments. The basic tenet of this theory lies in section 302 of the Act, which defines "earnings" and "garnishment" and, like the rest of the statute, became

---

1. 15 U.S.C.A. § 1674(a).

effective on July 1, 1970.[2] Plaintiff argues that if the definition of garnishment is not operative until July 1, 1970, then wherever that word is used in the Act it must refer only to those garnishments made after July 1.

We cannot agree. The definitions in section 302 seek only to clarify the meaning of certain terms. The definition of garnishment, for example, merely describes and delimits an event which may not serve as a predicate for firing unless it has occurred in connection with two debts. That word, as defined in section 302, does not contain a temporal limitation to prevent the employer from considering garnishments occurring before July 1, 1970. Nor can such a limitation be found in the effective date, which simply means that after July 1, 1970, the employer's right to fire his workers was restricted. On that date the Act's prohibitions became operative, and section 302's definitions help explain the nature and extent of those prohibitions.

Appellee argues, however, that to allow an employer to consider garnishments occurring before the effective date is to give unwarranted retroactive effect to the Act because it would necessitate a retrospective application of the definition of garnishment. Again we disagree. The effect of section 304 is to restrict the employer's right to fire his workers for reasons of garnishment. If our reading of the Act permits the employer to do what he could do before the Act existed, namely fire workers on garnishment grounds, how can that be called retroactive application? On the contrary, we would be producing a greater retroactive effect if we adopted the Secretary's position and effectively removed past garnishments from workers' employment records.

Next it is suggested that we must read the Act as contemplating only garnishments after July 1, 1970, in order to be consistent with section 303, which restricts the percentage of one's wages that may be subjected to garnishment.[3] This argument notes first that section 303 limits the percentage of one's wages that may be garnisheed after July 1, 1970. If that section uses "garnishment" to mean garnishment after July 1, then surely section 304's use of the word must also mean garnishment after July 1.

---

2. Section 302 provides:
§ 1672. Definitions.
For the purposes of this subchapter:
(a) The term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.
(b) The term "disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.
(c) The term "garnishment" means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt.
15 U.S.C.A. § 1672.

3. Section 303 provides:
§ 1673. Restriction on garnishment—Maximum allowable garnishment
(a) Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

(1) 25 per centum of his disposable earnings for that week, or

(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable, whichever is less. In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).

Exceptions

(b) The restrictions of subsection (a) of this section do not apply in the case of

(1) any order of any court for the support of any person.

(2) any order of any court of bankruptcy under chapter XIII of the Bankruptcy Act.

(3) any debt due for any State or Federal tax.

15 U.S.C.A. § 1673.

Our perusal of these two sections leads to a different conclusion. We agree that section 303's prohibition began on July 1, 1970, and that it limited the percentage of earnings "which *is subjected*" to garnishment. (Emphasis supplied.) It is directed exclusively at garnishments begun and not yet completed. Section 304, on the other hand, prohibits firing an employee because "his earnings *have been subjected* to garnishment. . . ." (Emphasis supplied.) This section is concerned with completed garnishments as well as ongoing garnishments. Thus the statute itself is "inconsistent" because it uses garnishment in two different senses, and our view of section 304's meaning remains unchanged.

■ Although we are unpersuaded by the argument that the statute's words standing alone, mandate adopting appellee's interpretation, there is a second ground in the trial court's opinion that calls for the same result. That ground is the time-honored maxim that courts give deference to the interpretation of the administrator charged with a statute's administration or enforcement. *See, e. g.,* Udall v. Tallman, 1965, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616. In regard to section 304, the Wage and Hour Administrator has said:

> Section 504 of the Consumer Credit Protection Act provides that Title III is to be effective July 1, 1970. Thus the proscription in section 304 against discharge from employment because of the garnishment of personal earnings is effective as of that date. Accordingly, it is our position in enforcing Title III under section 306 that an employer cannot take into account garnishments occurring before July 1, 1970, in applying section 304.

Wage-Hour Administrator Opinion Letter No. 1130 (WH–83), Oct. 8, 1970, CCH Lab.L.Rep. ¶ 30,697. *See also* Opinion Letter No. 1136 (WH–89), Oct. 26, 1970, CCH Lab.L.Rep. ¶ 30,703.

■ Courts generally recognize that an administrative interpretation of a statute is entitled to some deference, but the magnitude of the deference accorded varies with the circumstances. It cannot be argued that such an interpretation is controlling; in the absence of a statute giving an administrator power to make legislative rules, his rulings at best offer guidance to the courts, whose task it is to interpret statutes. Courts are free to substitute their judgment for such an administrative interpretation, but they will usually accord it at least some weight in their deliberations. An administrator's views merit great weight if there is special agency expertise and lack of court expertise, reenactment of the statute in circumstances which indicate legislative approval, a longstanding interpretation, or an interpretation made at the time of the statute's enactment by administrators who were especially informed of the legislative intent ("contemporaneous construction"). K. Davis, Administrative Law Text § 5.03. *See also* K. Davis, Administrative Law Treatise § 5.05; Zuber v. Allen, 1969, 396 U.S. 168, 192, 90 S.Ct. 314, 327, 24 L.Ed.2d 345.

■ In the instant case the only one of these four factors even arguable present is contemporaneous construction in the form of the opinion letter quoted above. The opinion letter, however, was authored in October 1970, some twenty-nine months after the Act's passage in May 1968 and too far removed in time to be considered contemporaneous. Therefore the Administrator's view of this issue is entitled to some deference but not great weight.

Even after according his interpretation some degree of deference we believe it is contrary to the plain meaning of section 304. We agree that Congress meant to give workers "simultaneous and uniform protection,"[4] but we find

---

4. In his opinion letter of October 26, 1970, the Wage-Hour Administrator said:

From our study we are convinced that there was a Congressional purpose to af-

ford simultaneous and uniform protection to all wage earners as of the effective date with respect to the restrictions contained in both sections 303 and 304. This

nothing in the statute to indicate that the protection given was meant to be so broad as the Administrator believes. Therefore we will exercise our prerogative of departing from his interpretation.

The next argument in favor of the Secretary's position is that his interpretation conforms with the purpose of the Act as expressed in the Act itself. We recognize, as section 301 points out, that this statute was intended to combat the by-products of garnishment: predatory extensions of credit and loss of employment. The Congress, however, did not choose to outlaw all firing on the basis of garnishment. Instead it chose the compromise measure of letting the employee have one indebtedness and its accompanying garnishments without jeopardizing his job security. Even under the Secretary's interpretation if the employee suffers two garnishments for two debts after July 1, 1970, he may be fired. Hence we conclude that section 304's purpose is to provide partial protection for the worker, and that purpose is consistent with both parties' interpretations.

The statute's legislative history is also consistent with both interpretations. In fact the legislative history is singularly unhelpful on the point before us. Although each party contends that it supports his point of view, we see nothing more than legislators reiterating that the Act prohibits "discharging any employee by reason of a single garnishment"[5] and similar statements.[6]

These statements do not answer the question whether the "single garnishment" must occur after the Act's effective date. Therefore the legislative history adds nothing to the plain language of the statute.

The previous judicial treatment of this statute is similarly inconclusive and unhelpful. Defendant-appellant cites two district court cases in its favor[7] and the Secretary cites one that supports his view.[8] No other circuit court has yet dealt with this question.

■ The Secretary's concluding argument is that even if we choose not to adopt his view of section 304's meaning, we should find that General Telephone discharged Ms. Long for one garnishment because there was a twenty-month gap between the last garnishment and the previous one. Whether or not defendant fired Ms. Long solely because of her last garnishment, without regard to the previous three, is not a question that can be raised before this court on appeal. That contention should have been raised before the trial court for resolution in its findings of fact.

Since the Secretary has not raised an argument compelling enough to warrant giving section 304 a gloss different from its plain meaning, we hold that the Consumer Credit Protection Act does not preclude firing employees because of pre-Act garnishments. We do not regard this holding as the death knell for section 304; had we adopted the Secretary's position an employee could nonetheless be fired after only two post-Act

---

can only be achieved by excluding all garnishments having no force and effect as of the effective date in applying the restrictions of not only section 303 but also those of section 304.
Opinion Letter No. 1136 (No. WH–89), Oct. 26, 1970, CCH Lab.L.Rep. ¶ 30,703.

5. 1968 U.S.Code Cong. & Admin.News, p. 1978.

6. "Section 203 prohibits the discharge of any employee by reason of the fact that, on one occasion, his compensation has been subjected to garnishment." *Id.* at U.S.Code Cong. & Admin.News, 1968, p. 1989. In a like vein

is the statement, "The amendment further prohibits an employer from firing an employee on occasion of a single garnishment on the latter's wages." *Id.* at U.S.Code Cong. & Admin.News 1968, p. 2017.

7. Hodgson v. Giant Snacks Co., N.D.Cal. 1973, 71 L.C. ¶ 32,884; Hodgson v. Consolidated Freightways, No. 71–382 (D.Ore., Apr. 11, 1972, unreported). These cases have been consolidated and now are pending before the Ninth Circuit Court of Appeals.

8. Nunn v. City of Paducah, W.D.Ky.1973, 72 L.C. ¶ 46,123 [Aug. 20, 1973, No. 21490].

garnishments. That is the maximum employee protection any court could possible read into this statute. Had Congress so chosen it could have adopted the approach of the Uniform Consumer Credit Code § 5.106 [9] by prohibiting garnishment discharges altogether. It chose instead to protect only those whose wages had been garnished for one debt.

By giving debtors limited, incomplete protection from discharge, Congress chose not to burden employers with those chronically unable to manage their financial affairs. Our decision today reflects that choice. Those with many debts and garnishments on their records will be exposed to termination, while those falling into debt and experiencing garnishment for the first time will find a haven in the Consumer Credit Protection Act.

The judgment of the district court is reversed.

9. U–CCC § 5.106 provides:
  No employer shall discharge an employee for the reason that a creditor of the employee has subjected or attempted to subject unpaid earnings of the employee to garnishment or like proceedings directed to the employer for the purpose of paying a judgment arising from a consumer credit sale, consumer lease, or consumer loan.
  Uniform Consumer Credit Code § 5.106 (Final draft, 1968).