James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

CONSOLIDATED FREIGHTWAYS, INC., a corporation, Defendant-Appellee.

James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

GIANT SNACKS COMPANY, a corporation, Defendant-Appellee.

Nos. 72–2405, 73–2016.

United States Court of Appeals, Ninth Circuit.

Aug. 19, 1974.

Harold C. Nystrom (argued), Atty., U. S. Dept. of Labor, Washington, D. C., for appellants.

David C. Landis (argued), of Gearin, Hollister & Landis, Portland Or., for appellee in 72–2405.

Wm. J. Meeske (argued), of Latham & Watkins, Los Angeles, Cal., for appellee in 73–2016.

Before CHOY and WALLACE, Circuit Judges, and PALMIERI,* District Judge.

CHOY, Circuit Judge:

These are consolidated appeals brought by the Secretary of Labor. In each case employees of the appellees had their wages garnished one or more times prior to July 1, 1970. When their wages were again garnished after that date for different debts, they were dismissed from employment pursuant to company rules permitting discharge for multiple wage garnishments.

The Secretary of Labor brought suit to reinstate the employees claiming the discharges violated § 304 of Title III of the Consumer Credit Protection Act, 15 U.S.C. § 1674. It provides that:

> No employer may discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness.

The basis of the Secretary's complaint was that only garnishments which occur after Title III's effective date of July 1, 1970 may be taken into account for purposes of § 304. So viewed, the discharges here were occasioned by gar-nishments for but a single indebtedness and thus prohibited by § 304. The district courts rejected the Secretary's claim in holding that pre-July, 1970 garnishments may also be considered. We affirm.

### Jurisdiction

Appellee Consolidated Freightways challenges the district court's jurisdiction. The Secretary had asserted there was jurisdiction under 28 U.S.C. § 1345 which supplies jurisdiction over all actions "commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." The only jurisdictional issue which concerns us here is the presence of an express congressional grant of power to sue, and the Secretary argues that § 306 of Title III, mandating that the Secretary of Labor "shall enforce the provisions of this subchapter," is such a grant.

Consolidated responds that § 306[1] cannot be taken literally. Under § 304 criminal penalties are prescribed for its willful violation; no criminal penalties attach to violation of Title III's other substantive enactment, § 303,[2] which limits the proportion of a worker's wages that may be garnished. From this, Consolidated concludes that the scheme of the Act was impliedly for exclusive criminal penalties for § 304 violations and civil enforcement of § 303.

We do not agree. Section 306 uses the plural "provisions of this subchapter." Since there are only two substantive sections in Title III, that must mean the power to sue extends to both §§ 303 and 304. The legislative history confirms that conclusion. The Senate version of the Consumer Credit Protection Act had no restrictions on garnishment, but the House version contained the predecessor to § 303 and a section prohibiting discharge for only one gar-

---

* The Honorable Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation.

1. 15 U.S.C. § 1676.

2. 15 U.S.C. § 1673.

nishment. In each of these provisions was a separate subsection authorizing the Secretary to civilly enforce. *See* 114 Cong.Rec. 1856 (1968). In what was a drafting simplification—as indicated by the lack of comment in the Conference Report [3] and the use of the term "subchapter" in § 306—the separate powers were consolidated by the Conference Committee in the final version of the Act.

Section 306, therefore, empowers the Secretary to sue in this class of discharge cases, and that is all that is necessary for § 1345 jurisdiction here.

*Effect of Pre-July, 1970, Garnishments*

█ We turn now to the central issue in this case: whether an employer may consider pre-July, 1970 garnishments under § 304. In prohibiting discharge of an employee by reason of a garnishment "for any one indebtedness," we think the language of the statute clearly comtemplates that an employer may consider other garnishments for different debts regardless of whether they occurred before or after Title III's effective date. *See* Brennan v. General Telephone Co., 488 F.2d 157, 158 (5th Cir. 1973). In the legislative background to Title III, there is no indication that Congress intended any differently. Title III was a controversial portion of the Consumer Credit Protection Act. *See* 114 Cong.Rec. 1830–41, 14388 (1968). If Congress had intended to wipe the slate clean of pre-July, 1970 garnishments, that surely would have been noticed in the debates or reports on the bill. Yet Congress nowhere expressed what the Secretary now urges.[4]

Still, the Secretary argues that general legislative statements pointing to the harshness of garnishment and the need for a congressional remedy [5] are a sufficient index that Congress wished § 304 to accomplish a garnishment amnesty. However, these statements, reflective of the rhetoric of debate, are equally consistent with the view that Congress chose to adopt a compromise guaranteeing job security to an employee with one indebtedness and consequent garnishment, but not outlawing discharges premised on garnishment altogether. In any case, the statements are far too general to weigh for a sweeping result inconsistent with the plain wording of the statute. If it had been desired to grant this supposed amnesty, it would have been reasonable for Congress to make the wish explicit, and not to leave such an easily accomplished end to be gleaned from the vague generalized objectives of the legislation.

In light of the statute's plain meaning, it would require very convincing reasons for us to adopt the Secretary's interpretation.[6] None of the reasons he offers is of such a convinving character.

The Secretary relies primarily on a rather ingenious use of statutory definitions. Since Title III's definition of "garnishment" in § 302 [7] became effective only when Title III itself came into force, he argues, there were no "garnishments" prior to July 1, 1970. But this misconceives the purpose of statutory definitions. They are normally not keyed to a cutoff date like regulatory provisions. Moreover, to accept this contention would mean an employer could dismiss a worker for a single pre-July, 1970 garnishment because it was not a "garnishment" within the meaning of the Act.

3. H.R.Rep.No.1397, 90th Cong., 2d Sess. 31–32 (1968).

4. See H.R.Rep.No.1040, 90th Cong., 1st Sess. 20–21, 31 (1967) ; 114 Cong.Rec. 1839 (remarks of Cong. Reuss), 14388 (remarks of Cong. Sullivan) (1968).

5. *E. g.*, H.R.Rep.No.1040, *supra* note 4, at 7, 8, 9–11, 20–21.

6. Brennan v. General Telephone Co., 488 F. 2d at 158.

7. 15 U.S.C. § 1672.

The Secretary also points to his administrative interpretations of § 304[8] in accord with his position here and urges on us the notion that such interpretations are to be given judicial deference. Granting that administrative expertise warrants that courts give some weight to agency interpretations, "[t]he deference owed to an expert tribunal cannot be allowed to slip into judicial inertia. . . . " American Shipbuilding Co. v. NLRB, 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965).

> The weight of such [an administrative] judgment in a particular case will depend on the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). The Secretary's interpretation is simply not persuasive enough to outweigh the clear import of § 304.

Finally, our reading of § 304 does not give it an impermissible retroactive effect. "A statute is not made retroactive merely because it draws upon antecedent facts for its operation." Cox v. Hart, 260 U.S. 427, 435, 43 S.Ct. 154, 157, 67 L.Ed. 332 (1922). Counting pre-July, 1970 garnishments permits an employer to do what was allowed prior to Title III—base job retention on the avoidance of garnishments—though limiting that right by the new prerequisite of a previous debt and garnishment. Indeed, to rule an employer cannot consider pre-Title III garnishments would accord the statute an even greater retroactive effect by negating the meaning of events that had some effect before the statute came into force. *See* Brennan v. General Telephone Co., 488 F.2d at 159.

We therefore agree with all but one of the courts that have confronted this issue and hold that § 304 permits consideration of pre-July, 1970 garnishments.[9]

Affirmed.

---

8. Wage & Hour Administrator, opinion letter No. 1136, Oct. 26, 1970, *published at* 2 CCH Lab.L.Rep.—Wages & Hours ¶ 30,703; Wage & Hour Administrator, opinion letter No. 1130, Oct. 8, 1970, *published at* 2 CCH Lab.L.Rep.—Wages & Hours ¶ 30,697.

9. *Accord,* Simpson v. Sperry Rand Corp., 488 F.2d 450 (5th Cir. 1973) ; Brennan v. General Telephone Co., 488 F.2d 157 (5th Cir. 1973) ; Brennan v. H. K. Porter, Inc., Civ. Action No. 2915–H (S.D.W.Va., May 23, 1974) ; Brennan v. Housing Authority, 21 Wage & Hour Cases 539 (W.D.Mo.1973). *Contra,* Nunn v. City of Paducah, 21 Wage & Hour Cases 308 (W.D.Ky.1973).