QUESTIONS: 1. May a local government, prior to July 1, 1979, adopt an interim plan for the purpose of providing guidance in the enactment or amendment of local land development regulations, pending the adoption of such an element of a comprehensive plan as required by the Local Government Comprehensive Planning Act? 2. Does s. 163.3177(5) and (6)(a), F. S., require that the land use plan element of a comprehensive plan adopted pursuant to the Local Government Comprehensive Planning Act include a land use map of proposed use, said map being similar in form to a zoning map?
SUMMARY: Comprehensive plans as prescribed by s. 163.3177, F. S., may be prepared and adopted only in conformance with, and under the terms and provisions of, the Local Government Comprehensive Planning Act of 1975. No "interim" comprehensive plans are authorized by, nor may they be otherwise adopted under, the provisions of that act. Section 163.3177(5) and (6)(a), F. S., does not require that the future land use plan element of the local comprehensive plan include a land use map in the form and nature of a zoning map, although such element may include a land use map of such nature if deemed to be appropriate to the guidelines and standards prescribed in the several elements of the local comprehensive plan. At the outset, it seems appropriate to note that the Interdepartmental Coordinating Council on Community Services, an advisory body (see s. 20.03(9), F. S.) within the Department of Community Affairs (see s. 20.18(5), F. S.), any ad hoc working groups of said coordinating council (see s.20.18[5][c]), and all regional agencies (see s. 163.3164(17), F. S.) involved in the administration and implementation of the Local Government Comprehensive Planning Act of 1975 are directed by s.163.3204, F. S., to "cooperate and work with units of local government and technical advisory committees [see s. 163.3207, F. S.] in the preparation and adoption of comprehensive plans, or elements or portions thereof." See ss. 163.3164(2) and 163.3177, F. S. The Local Government Comprehensive Planning Act became effective July 1, 1975. However, neither s. 20.18(5), F. S., nor s. 163.3204, F. S., empowers or authorizes the Department of Community Affairs, as such, to itself assist local governments or to provide technical assistance to local governments in the preparation and adoption of any such "interim plans" addressed in your inquiry. These aforecited sections, read together, provide only that the Interdepartmental Coordinating Council cooperate and work with units of local government in the preparation and adoption of comprehensive plans, or elements or portions thereof. In such interaction, the department itself should not assume or undertake any such authority or function. See State ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628, cert. denied, 300 So.2d 900. Further in this regard, it should be noted that the express mention of the Interdepartmental Coordinating Council in the aforementioned context impliedly excludes all other bodies or agencies. See Dobbs v. Sea Isle Hotel, 56 So.2d 341 (Fla. 1952). AS TO QUESTION 1: Section163.3161(6), F. S., of the Local Government Comprehensive Planning Act, hereinafter referred to as the "act," states: It is the intent of this act that the activities of units of local government in the preparation and adoption of comprehensive plans, or elements or portions therefor [sic], shall be conducted in conformity with the provisions of this act. Such language acts as an express prohibition against comprehensive plans, or elements or portions thereof, being prepared and adopted in any manner or under any terms or provisions other than described therein. Alsop v. Pierce, 19 So.2d 799 (Fla. 1944); In re Advisory Opinion of Governor, Civil Rights, 306 So.2d 520 (Fla. 1975). Nowhere within the act is any provision made for the adoption of such "interim" comprehensive plans, or elements or portions thereof, as are cited in your request. Although s. 163.3197, F. S., authorizes and continues in force and effect comprehensive plans or portions thereof adopted prior to July 1, 1975, until appropriate action is taken to adopt a new comprehensive plan as required by the act, it is silent as to the adoption and promulgation of any such interim plans as you have suggested. The absence of any provision for, or mention of, such interim plans as are here under consideration operates in this context to preclude their promulgation or adoption under the authority of this section. State v. Jacksonville Terminal Co., 71 So. 474 (Fla. 1916); Edgerton v. International Company, 89 So.2d 488 (Fla. 1956); Dobbs v. Sea Isle Hotel, supra. Section 163.3161(5), F. S., of the act states it is the intent of the act that "adopted comprehensive plans shall have the legal status set out in this act and that no public or private development shall be permitted except in conformity with comprehensive plans, or elements or portions thereof, prepared and adopted in conformity with this act." Such an express limitation operates as an effective prohibition against "development" proceeding under, or according to, any comprehensive plan, or element or portion thereof, not promulgated and adopted according to the terms and provisions of the act. In setting out the legal status of plans adopted in conformity with the act, s. 163.3194, F. S., inter alia, provides that: (1) After a comprehensive plan or element or portion thereof has been adopted in conformity with this act, all development undertaken by, and all actions taken in regard to development orders by, governmental agencies in regard to land covered by such plan or element shall be consistent with such plan or element as adopted. . . . Thus, reading the aforementioned statutory provisions in pari materia, it is seen that no authorization exists within the act for the adoption of such interim comprehensive plans, that local units of government are restricted in the process of promulgation and adoption of comprehensive plans, or elements or portions thereof, to those terms and provisions provided within the act and, further, that after such promulgation and adoption, no public or private development as defined in s. 380.04, F. S. (see s. 163.3164(4), F. S.), is to be permitted except in conformity with said plans and only those plans. Further, I am informed by the Division of State Planning of the Department of Administration, which agency is charged with varied and significant duties in regard to the administration and implementation of the act, that it has administratively interpreted the act as prohibitive of such interim comprehensive plans. Administrative interpretations of statutes by agencies charged with their administration and implementation are generally given considerable deference by the courts and are accorded great weight when there is special agency expertise and a lack of court expertise. Brennan v. General Telephone Company of Florida, 488 F.2d 157 (5th Cir. 1973); State ex rel. Biscayne Ken. Cl. v. Board of Bus. Reg., 276 So.2d 823
(Fla. 1973). Contemporaneous administrative construction of a statute by those charged with its enforcement or interpretation is entitled to great weight; and, although not controlling, the courts generally will not depart from such construction unless it is clearly erroneous or unauthorized. Gay v. Canada Dry Bottling Co. of Florida, 59 So.2d 788 (Fla. 1952); Daniel v. Florida State Turnpike Authority, 213 So.2d 585 (Fla. 1968); Miller v. Brewer Co. of Fla., 122 So.2d 565 (Fla. 1960). I do not find any clear error or lack of authorization present in regard to the administrative construction proffered by the division and therefore concur in the same. The above is not intended to express the view that local governments may not properly exercise those planning, zoning, and other general land use and management powers granted to them by Chs. 125 and 166, F. S., except to the extent that said local governments indulge in comprehensive planning under ss. 163.3161-163.3211, F. S. That is to say that development may continue under existing plans and statutes until such time as the required comprehensive plans are adopted, and planning, zoning, and building ordinances and other land use and management devices or regulations may be amended or instituted. However, no comprehensive plans as delineated in s. 163.3177, including "interim plans," may be adopted except in conformity with, and under the terms and provisions of, the act. To the extent that the Local Government Comprehensive Planning Act conflicts with any other provisions of law relating to local governments' authority to regulate the development of land, the provisions of the act govern unless its provisions are met or exceeded by other provisions of law. Section 163.3211; cf. Ch. 75- 390, Laws of Florida. Therefore, in consideration of the foregoing, I am of the opinion that such interim plans as have been discussed hereinabove are not permissible under the terms and provisions of the Local Government Comprehensive Planning Act of 1975. AS TO QUESTION 2: The statutory provisions cited in your request in this regard seem to give little direction on their face as to the proper disposition of this particular question. However, closer examination of these and other applicable provisions will serve to clarify this matter. Section 163.3177(5), F. S., requires that the comprehensive plan contain policy recommendations for the implementation of the plan. As the precise form of those policy recommendations is not prescribed therein, it is difficult to see how this provision can be construed to require a detailed zoning map of any land area. Section 163.3177(6)(a), F. S., provides that a comprehensive plan, in addition to the required elements of s.163.3177(1)-(5), F. S., must include a future land use plan element "designating proposed future general distribution, location and extent of the uses of the land for housing, business, industry, agriculture, recreation" (Emphasis supplied.), and further requires a "statement of the standards to be followed in the control and distribution of population densities and building and structure intensity as recommended for the various portions of the area," and permits the designation of areas for future planned development use involving combinations of types of uses for which special regulations may be necessary to assure development in accord with the principles and standards of the comprehensive plan. As noted by emphasis, the plan must include a land use element generally describing the distribution, location, and extent of the uses to be made of the land in the future. This language does not seem to operate to require a zoning map to be drawn to fulfill this requirement; indeed, it does not seem to require the construction of a map, per se, of any type, nor does it forbid it. Further in this regard, s. 163.3177(1), F. S., plainly states that the comprehensive plan "shall consist of materials in such descriptive form, written or graphic, as may be appropriate to the prescription of principles, guidelines, and standards for the orderly and balanced future economic, social, physical, environmental, and fiscal development of the area." (Emphasis supplied.) Thus, the act specifically grants to local governments the option to fulfill the requirements of s. 163.3177
by either written or graphic means, or a combination thereof, and does not require that a zoning-type map be the sole mode of satisfaction thereof. Therefore, reading s. 163.3177(1)-(5) and (6)(a), F. S., in pari materia, I am of the opinion that the act does not require that the future land use plan element required by s. 163.3177(6)(a) include a land use map in the form and nature of a zoning map. However, the future land use plan element may include a land use map of such nature if deemed to be appropriate to the guidelines and standards prescribed in the several elements of the local comprehensive plan.