**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,**

v.

**SOUTHERN CALIFORNIA GAS COMPANY, Defendant-Appellee.**

No. 82–6049.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1983.

Decided Sept. 16, 1983.

Jill Griffin, Washington, D.C., for plaintiff-appellant.

B. Glenn George, Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendant-appellee.

Before BROWNING, CHOY and FERGUSON, Circuit Judges.

PER CURIAM:

The Secretary of Labor brought this action charging the Southern California Gas

Company with a violation of the Consumer Credit Protection Act. 15 U.S.C. §§ 1601–1693. The Secretary alleges that in discharging Dianne Allen because her wages had been garnished, the company violated section 304(a) of the Act. 15 U.S.C. § 1674(a). That section prohibits an employer from discharging an employee whose earnings "have been subjected to garnishment" on account of only one indebtedness. The Secretary contends that garnishment has not occurred until such time as earnings have actually been withheld, while the company contends that garnishment has occurred at the time the employer first receives a legally binding garnishment notice.

The parties stipulated to facts showing that while the company had received two garnishment notices from different creditors in connection with Ms. Allen's earnings, Ms. Allen had promptly secured a release from the second creditor, and therefore no wages had been withheld pursuant to the second order. On cross-motions for summary judgment on this issue of statutory construction, the district court ruled for the defendant. We reverse.

FACTS:

Ms. Allen was employed by Southern California Gas as a collection control clerk from July 23, 1973 until December 8, 1977. On May 9, 1977 the company received a notice of garnishment and a writ of execution for a debt which she owed to National Business Factors, Inc. This debt had been incurred during her marriage. However, she was divorced by the time it became the subject of the garnishment. Upon receipt of the notice, the company informed Ms. Allen of its delivery and reviewed with her its written policy regarding garnishment. On May 18, 1977 and May 27, 1977, the company remitted amounts in partial satisfaction of the National Business Factors debt. The company counted these payments as Ms. Allen's first and second garnishments.

On May 31, 1977, the company received a second notice of garnishment and writ of execution against Ms. Allen pursuant to a judgment in favor of the Joseph Magnin Company, Inc. It considered this Ms. Allen's third garnishment. She immediately contacted Joseph Magnin and obtained an order of release, which was received by her employer on June 9, 1977. Between receipt of the writ and the release, no actual garnishment of Ms. Allen's wages occurred; however, under company policy, the Joseph Magnin debt counted as her third garnishment for two debts within a nine-month period. She was therefore required to take a two-day disciplinary lay-off. She was also reminded that should the company receive another garnishment within the nine-month period, she would be terminated.

On June 13, 1977, the company received a second order to release, dated June 7, 1977, from National Business Factors, which released the May 9, 1977 garnishment notice. For six months nothing further happened. However on December 7, 1977, the company received another notice of garnishment and writ of execution arising from the original National Business Factors debt. On December 8, Ms. Allen was informed of its receipt and was also told that this was considered her fourth garnishment. She immediately contacted National Business Factors and made arrangements for a release, but at the end of that day she was informed that she was being terminated. She elected to resign rather than be discharged. A check for her final wages was prepared and those wages were garnished. On December 16, 1977, the company received an order of release from National Business Factors dated December 13, 1977. A check was then prepared and sent to Ms. Allen for the amount of the final garnishment.

The Secretary of Labor, who is charged with the enforcement of the Consumer Credit Protection Act, brought suit on behalf of Ms. Allen, seeking her reinstatement and back wages. The parties stipulated to the facts and filed cross-motions for summary judgment seeking judicial interpretation of the meaning of the underlined words of the Act:

No employer may discharge any employee by reason of the fact that his earnings

*have been subjected to garnishment* for any one indebtedness.

15 U.S.C. § 1674(a). After an interval of three years, the district court ruled for the defendant, reasoning that California's contemporaneous garnishment statute imposed a duty upon the employer to withhold a debtor's earnings from the time the writ was served and therefore brought the state within the purview of an Opinion Letter issued by the Wage and Hour Administrator in 1970. This appeal followed.

DISCUSSION:

The district court granted summary judgment on a pure question of law, the construction of a statute. There are no disputed facts. The appellate standard of review is therefore *de novo*. *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 543 (9th Cir.1975).

This statute has not previously been construed in the Ninth Circuit.

> ... in a case of first impression, the courts look to the traditional signposts for statutory interpretation: first, the language of the statute itself; and second, its legislative history and the interpretation given by its administering agency, both as guides to the intent of Congress in enacting the legislation.

*Turner v. Prod*, 707 F.2d 1109, 1114 (9th Cir.1983).

A. *The Language*

■ The courts begin interpretation of a statute with the language itself. *Consumer Product Safety Commission v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In construing the same clause of this statute in a similar factual setting, the Seventh Circuit said:

> Garnishment is defined in § 302(c) of the Act, 15 U.S.C. § 1672(c), as "any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt." ... [T]he use of the present tense, rather than the future tense, in the phrase "are required to be withheld" supports a construction that in order for the earnings to "have been subjected to garnishment"

> those earnings must first be actually *withheld* pursuant to a garnishment order.

*Brennan v. Kroger Co.*, 513 F.2d 961, 963 (7th Cir.1975) (emphasis added). We agree.

Moreover, the phrase "subjected to garnishment" in section 304(a) refers to "earnings." The district court held that the Magnin notice constituted a subjection to garnishment, despite the fact that nothing whatsoever happened to Ms. Allen's earnings as a consequence of it. The court's analysis thus does not comport with the express language of the statute.

B. *Legislative History*

In 1968 when the Consumer Credit Protection Act was passed, Congress was greatly concerned about the negative effects of garnishment upon individual workers, 15 U.S.C. § 1671(a); the termination of employment which often came in the train of garnishment, 15 U.S.C. § 1671(a)(2); the high correlation between garnishment and personal bankruptcy, Hearings on H.R. 11601 Before Subcomm. on Consumer Affairs of the House Comm. on Banking & Currency, 90th Cong., 1st Sess. pt. 1 at 540 (1967) [hereinafter Hearings]; and the unacceptably high level of damage to the country's economic well-being which it felt was created by the interaction between the two, 15 U.S.C. § 1671(a)(3); House Committee on Banking & Currency, Report on H.R. 11601, H.R.Rep. No. 1040, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.Code Cong. & Admin.News 1962 at 1978 [hereinafter Committee Report]. Initially, it considered legislation which would have outlawed garnishment entirely. *Id.* However, it was persuaded that such an abolition would work hardship upon honest creditors, and so it enacted sections 303(a) and 304(a), which limited the amounts which could be taken by garnishment and restricted the employer's power to terminate as a consequence of garnishment. 15 U.S.C. §§ 1673(a), 1674(a); Committee Report at 1978.

It seems clear that the dominant purpose of Congress in enacting this legislation was to protect employees from the adverse effects of garnishment proceedings and discharges based upon them. Although the district court spoke in terms of Congress' balancing between the interests of the employer and the employee in garnishment proceedings (the expense and inconvenience for the employer against the livelihood of the employee), we see no evidence of this in the legislative history. The fact that Congress struck a balance between the interests of the debtor and creditor is not an invitation for the courts to extend that balance to the interests of the employer. The legislative history reveals the statute's dominant purpose as being the preservation of an employee's job. *Brennan v. Kroger,* 513 F.2d at 964. Such a purpose cannot be reconciled with a reading of the language which permits a termination upon the mere service of a second garnishment order. *Id.*

Ms. Allen falls squarely within the group whom Congress wished to protect. She had contracted heavy debts while married. She was working to liquidate them after her divorce. Three times in the nine months covered by the stipulated facts of this case she got releases from her creditors and appears to have been making payments on her debts; she did not resort to bankruptcy with its concomitant damage to the national economy. Her forced resignation would leave her without income to meet her obligations. To allow the construction of the statute which the company here urges undermines the purpose of Congress in enacting the statute. We will not do so.

*C. Administrative Interpretation*

█ In interpreting a statute the courts look first to its language and second to congressional purpose. If purpose can be ascertained, the inquiry stops there. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979); *Philbrook v. Glodgett,* 421 U.S. 707, 713–14, 95 S.Ct. 1893, 1898–99, 44 L.Ed.2d 525 (1975). Legislative history and administrative interpretation are looked at as guides to the intent of Congress. Deference is often accorded to interpretations of the agency made at the time of enactment on the theory that the agency entrusted with the administration of a statute is likely to be well informed about the intent of Congress in enacting it. *Zenith Radio Corp. v. United States,* 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978); *Brennan v. General Telephone Co. of Florida,* 488 F.2d 157, 161 (5th Cir.1973). The status of the three documents being cited to us as contemporaneous interpretations is questionable because they range in age from twenty-seven months after enactment to eight years after enactment. *General Electric v. Gilbert,* 429 U.S. 125, 142–43, 97 S.Ct. 401, 411–12, 50 L.Ed.2d 343 (1976); *Brennan v. General Telephone Co. of Florida,* 488 F.2d at 160. In any event, their message is ambiguous. Of the three documents, the September 1970 Opinion Letter upon which the district court relied seems to rule as defendants would wish. Wage-Hour Administrator Opinion Letter No. 1119 (WH–72), Sept. 4, 1970 (CCH Lab. L.Rep. ¶ 30,703). One 1977 agency publication clearly takes the position which the Secretary as plaintiff is arguing to this court. Wage-Hour Publication No. 1324, revised January 1977. The remaining Opinion Letter, Wage-Hour Administrator Opinion Letter 1136 (WH–89), Oct. 26, 1970 (CCH Lab.L.Rep. ¶ 30,703), seems to us ambiguous; the ambiguity is illustrated by the fact that although the Seventh Circuit regarded it as favorable to the plaintiff, *Brennan v. Kroger,* 513 F.2d at 965, the district court below regarded it as favorable to the defendant. The agency interpretation is therefore unclear. Fortunately, the legislative history makes it unnecessary to pursue agency interpretation further.

█ We therefore hold that "earnings have been subjected to garnishment" within the meaning of Section 304(a) only when they have actually been withheld from the paycheck of the employee. We do not reach the question of which point in the paycheck preparation cycle constitutes that withholding since there is no contention in the record before us that Dianne Allen's check was

in any state of preparation when she secured her release from Joseph Magnin. The district court is reversed and this case is remanded for further proceedings in accordance with this opinion.