**Harry LEWIS and the Portland Gray Panthers, individually and on behalf of all others similarly situated, Plaintiffs-Appellees,**

v.

**Leo T. HEGSTROM, individually and in his capacity as Director of the Department of Human Resources of the State of Oregon; Keith Putman, individually and in his capacity as Administrator of the Adult and Family Services Division of the State of Oregon, et al., Defendants-Appellants.**

No. 84–3679.

United States Court of Appeals, Ninth Circuit.

Argued Jan. 15, 1985.

Submitted Feb. 19, 1985.

Decided Aug. 8, 1985.

Michael H. Marcus, Portland, Or., for plaintiffs-appellees.

Robert W. Muir, Asst. Atty. Gen., Salem, Or., for defendants-appellants.

Before GOODWIN, SKOPIL and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

This class action civil rights suit involves the proper computation of the period of ineligibility for Medicaid applicants in the state of Oregon who transfer their home for less than fair market value within two years of applying for Medicaid assistance. The sole issue before this court is whether proposed Or.Admin.R. 461–04–070(6)(e), which defines the period of ineligibility for such applicants, is invalid under the Supremacy Clause on the ground that it conflicts with 42 U.S.C. § 1396p(c)(2)(B).

The district court conducted a careful review of the statute and its legislative history. It concluded that "[t]he logical reading of [the language of the statute] supports plaintiffs' position," *Lewis v. Hegstrom*, 581 F.Supp. 183, 187 (D.Or.1983), and awarded judgment accordingly.[1]

We believe that the court below placed undue emphasis upon isolated words of the statute in seeking an understanding of Congress' intent and in doing so failed to construe ambiguous statutory language in a manner which achieved the statute's overall object. We hold that proposed Or.

---

1. Oregon did not seek a stay of the district court's judgment pending this appeal, rather Oregon amended Or.Admin.R. 461–04–070(6)(e) (1984) to conform to the judgment of the district court. This action by Oregon does not moot this appeal. *See Maher v. Roe*, 432 U.S. 464, 468–69 n. 4, 97 S.Ct. 2376, 2379–80 n. 4, 53 L.Ed.2d 484 (1977).

Admin.R. 461–04–070(6)(e) is consistent with federal law, and we reverse.

BACKGROUND

### A. *Medicaid*

Medicaid is a cooperative federal-state program established in 1965 as Title XIX of the Social Security Act (the Act), 79 Stat. 343, as amended, codified at 42 U.S.C. § 1396 et seq., to provide federal financial assistance to states that elected to reimburse specified costs of medical treatment for needy individuals. *See generally Schweiker v. Gray Panthers*, 453 U.S. 34, 36, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460 (1981). Participating states must each develop a plan containing "reasonable standards for determining eligibility for and the extent of medical assistance." *Id.* (quoting 42 U.S.C. § 1396a(a)(17)). State plans must comply with the requirements imposed by the Act and the implementing regulations. *See* 42 U.S.C. 1396a(b); *Schweiker v. Gray Panthers*, 453 U.S. at 37, 101 S.Ct. at 2636. As long as a state complies with the requirements of the Act, it has wide discretion in administering its local program. *Dawson v. Meyers*, 622 F.2d 1304 (9th Cir.1980), *vacated on other grounds sub nom, Beltran v. Myers*, 451 U.S. 625, 101 S.Ct. 1961, 68 L.Ed.2d 495 (1981).

An applicant is entitled to Medicaid if he or she satisfies the eligibility criteria established by the applicant's state. *Schweiker v. Gray Panthers*, 453 U.S. at 36–37, 101 S.Ct. at 2636.

In its state plan, each state determines the rate of reimbursement to medical facilities for medical care provided. 42 U.S.C. § 1396a(a)(13)(A). The state reimbursement rates are subject to the Secretary's approval. *Id.* Once a state plan is approved by the Secretary, the state is reimbursed by the federal government for a portion of the funds expended by the state.

Oregon has adopted a state plan which fixes the maximum rate at which a facility may be reimbursed at 75 percent of its actual allowable costs. Or.Admin.R. 411–70–440(2) (1983). In Oregon, Medicaid re-cipients are required to contribute to the cost of their care all of their income and resources above a minimal amount which may be kept for personal needs. Or.Admin.R. 411–70–045(2) and 411–70–095 (1983). In practice, participating medical facilities in Oregon receive, on the average, $1,350 per month per patient under this reimbursement formula, $1,000 of which is paid by the state and the balance of $350 is paid to the facility by the Medicaid patient for his or her own care.

Since the enactment of the Boren-Long amendment in 1980, P.L. 96–611, § 5, 94 Stat. 3567 (1980), codified at 42 U.S.C. §§ 1382b(c) and 1396a(j)(1) (1981), the Medicare Act has recognized that the principle of providing assistance only to those in need could be defeated by transfers of assets for less than fair market value in order to establish eligibility. To bar improper claims by individuals who transfer assets for less than fair market value, the federal statute declared, in general, that applicants who make such transfers may be rendered temporarily ineligible for assistance. 42 U.S.C. § 1396a(j)(1) (1981). This statute was commonly referred to as the federal transfer of assets rule.

A transfer of the home, however, continued to be accorded more solicitous treatment. In 1982, when this action was commenced, federal law provided that homes were exempt from the federal transfer of assets rule. 42 U.S.C. § 1382b(a)(1) (1982). Notwithstanding the federal *exclusion* of homes from the transfer of assets rule, Oregon elected to *include* homes as a resource in determining Medicare eligibility under its state transfer of assets rule. Or. Admin.R. 461–04–070 (1982). This action was filed in July 1982, to challenge that Oregon practice.

While this suit was pending in district court, Congress enacted the Tax, Equity and Fiscal Responsibility Act, P.L. 97–248, 96 Stat. 370 (1982), (TEFRA). TEFRA repealed 42 U.S.C. § 1396a(j) (1981) and replaced it with a more detailed transfer of

assets rule, 42 U.S.C. § 1396p(c).[2] Effective September 3, 1982, TEFRA made the home countable as a resource for purposes of determining Medicaid eligibility, under specified circumstances. States were expressly authorized to establish a period of ineligibility in cases where Medicaid applicants had transferred their home for less than fair market value within two years of applying for benefits. 42 U.S.C. § 1396p(c)(2)(B)(i).

Pursuant to the authority granted under 42 U.S.C. § 1396p(c)(2)(B)(i), Oregon amended various of its rules pertaining to Medicaid eligibility, including Or.Admin.R. 461–04–070. The amendment to Rule 461–

2. 42 U.S.C. § 1396p(c) provides:

(c) Denial of medical assistance; period of eligibility; exceptions

(1) Notwithstanding any other provision of this subchapter, an individual who would otherwise be eligible for medical assistance under the State plan approved under this subchapter may be denied such assistance if such individual would not be eligible for such medical assistance but for the fact that he disposed of resources for less than fair market value. If the State plan provides for the denial of such assistance by reason of such disposal or resources, the State plan shall specify a procedure for implementing such denial which, except as provided in paragraph (2), is not more restrictive than the procedure specified in section 1382b(c) of this title, and which may provide for a waiver of denial of such assistance in any instance where the State determines that such denial would work an undue hardship.

(2)(A) In any case where the uncompensated value of disposed of resources exceeds $12,000, the State plan may provide for a period of ineligibility which exceeds 24 months. If a State plan provides for a period of ineligibility exceeding 24 months, such plan shall provide for the period of ineligibility to bear a reasonable relationship to such uncompensated value.

(B)(i) In the case of any individual who is an inpatient in a skilled nursing facility, intermediate care facility, or other medical institution, if such individual is required, as a condition of receiving services in such institution under the State plan, to spend for costs of medical care all but a minimal amount of his income required for personal needs, and, who, at any time during or after the 24–month period immediately prior to application for medical assistance under the State plan, disposed of a home for less than fair market value, the State plan (subject to clause (iii) ) may provide for a period of ineligibility for medical assistance in accordance with clause (ii).

(ii) If the State plan provides for a period of ineligibility under clause (i), such plan—

(I) shall provide that such individual shall be ineligible for all medical assistance for a period of 24 months after the date on which he disposed of such home, except that, in the case where the uncompensated value of the home is less than the average amount payable under the State plan as medical assistance for 24 months of care in a skilled nursing facility, the period of ineligibility shall be such shorter time as bears a reasonable relationship (*based upon the average amount payable under the State plan as medical assistance for care in a skilled nursing facility*) to the uncompensated value of the home, and

(II) may provide (at the option of the State) that, in the case where the uncompensated value of the home is more than the average amount payable under the State plan as medical assistance for 24 months of care in a skilled nursing facility, such individual shall be ineligible for all medical assistance for a period in excess of 24 months after the date on which he disposed of such home which bears a reasonable relationship (*based upon the average amount payable under the state plan as medical assistance for care in a skilled nursing facility*) to the uncompensated value of the home.

(iii) An individual shall not be ineligible for medical assistance by reason of clause (ii) if:

(I) a satisfactory showing is made to the State (in accordance with any regulations promulgated by the Secretary) that the individual can reasonably be expected to be discharged from the medical institution and to return to that home,

(II) title to such home was transferred to the individual's spouse or child who is under age 21, or (with respect to States eligible to participate in the State program established under subchapter XVI of this chapter) is blind or permanently and totally disabled, or (with respect to States which are not eligible to participate in such program) is blind or disabled as defined in section 1382c of this title,

(III) a satisfactory showing is made to the State (in accordance with any regulations promulgated by the Secretary) that the individual intended to dispose of the home either at fair market value, or for other valuable consideration, or

(IV) the State determines that denial of eligibility would work an undue hardship

(3) In any case where an individual is ineligible for medical assistance under the State plan solely because of the applicability to such individual of the provisions of section 1382b(c) of this title, the State plan may provide for the eligibility of such individual for medical assistance under the plan if such individual would be so eligible if the State plan requirements with respect to disposal of resources applicable under paragraphs (1) and (2) of this subsection were applied in lieu of the provisions of section 1382b(c) of this title. (Emphasis added).

04–070 initially was in the form of a temporary rule. Or.Admin.R. 461–04–070 (September 1982).

On December 12, 1982, a second amended complaint was filed in this action challenging Oregon's new regulations. The plaintiffs alleged that the temporary Rule 461–04–070, and other rules governing an applicant's Medicaid eligibility, exceeded TEFRA's limitations and, therefore, were invalid under the Supremacy Clause.[3]

After extensive settlement negotiations, the parties reached an agreement on all of the issues, with the exception of the validity of Rule 461–04–070(6)(e).

Oregon adopted a "permanent" version of Rule 461–04–070 on March 11, 1983.[4] The "permanent" version included a separate subsection addressing the computation of the period of ineligibility resulting from the transfer of a home for less than fair market value. Or.Admin.R. 461–04–070(6)(e) (1983). Subsection (6)(e) of the "permanent" rule provided:

> For purposes of this section, the period of ineligibility shall last for one month for every full $1000 [one thousand dollars] of uncompensated value beginning with the first month in which Title XIX medical assistance payments would be payable to the skilled nursing facility, intermediate care facility or medical institution.

Or.Admin.R. 461–04–070(6)(e).

The version of Rule 461–04–070(6)(e) proposed by Oregon during the settlement negotiations is identical to the permanent rule adopted on March 11, 1983. The plaintiff class rejected the proposed rule on the ground that it conflicted with federal law.

The relevant federal statute, 42 U.S.C. § 1396p(c)(2)(B)(i), provides that in the event of a transfer of a home for less than fair market value the individual shall be ineligible for medical assistance for a period of 24 months, or for a lesser or longer period of time "as bears a reasonable rela-

tionship (*based upon the average amount payable under the state plan as medical assistance for care in a skilled nursing facility*) to the uncompensated value of the home."

The plaintiff class argues here, as it did in the district court, that the period of ineligibility must be determined by dividing the total amount actually paid to the institution ($1,350) into the uncompensated value of the home. Oregon contends that the period of ineligibility is properly determined by dividing the amount paid to the institution *by the state* ($1,000) into the uncompensated value of the home.

It is apparent that the dispute between the parties is over the proper interpretation of the language "based upon the average amount payable under the state plan as medical assistance for care in a skilled nursing facility." Dramatically different consequences flow from the two differing interpretations of this language. For example, the transfer of a home for $27,000 less than fair market value would result in 27 months of ineligibility, under Oregon's interpretation of its regulation, but only 20 months of ineligibility if the plaintiff class is correct. The district court ruled in favor of the plaintiff class. *Lewis v. Hegstrom*, 581 F.Supp. 183.

The crux of this appeal is whether proposed Oregon rule 461–04–070(6)(e) is inconsistent with 42 U.S.C. § 1396p(c)(2)(B)(i-i)(I) and (II) and must yield to the Supremacy Clause.

## ANALYSIS

■ We begin with the settled proposition that state regulations which are inconsistent with federal law are invalid under the Supremacy Clause. *See Townsend v. Swank*, 404 U.S. 282, 285, 92 S.Ct. 502, 504, 30 L.Ed.2d 448 (1971); *Carleson v. Remillard*, 406 U.S. 598, 601, 92 S.Ct. 1932, 1934, 32 L.Ed.2d 352 (1972).

---

**3.** The plaintiff class also challenged the legality of Or.Admin.R. 413.170, 461–04–245, and 461–05–908.

**4.** Under Oregon law, a temporary rule may not remain in effect for more than 180 days. Or. Rev.Stat. § 183.335(6)(a) (1983).

■ 42 U.S.C. § 1396p(c)(2)(B)(i) clearly authorizes states to establish a period of ineligibility for Medicaid assistance for applicants who sold their home for less than fair market value during or after the 24 month period immediately prior to applying for Medicaid assistance. In determining whether proposed Or.Admin.R. 461–04–070(6)(e) comports with this grant of authority, we, like the district court, must construe the meaning of "the average amount payable under the state plan as medical assistance for care in a skilled nursing facility," as used in 42 U.S.C. § 1396p(c)(2)(B)(ii)(I) and (II). The construction of a statute is subject to *de novo* review. *United States v. Louisiana-Pacific Corp.*, 754 F.2d 1445, 1447 (9th Cir.1985); *Callejas v. McMahon*, 750 F.2d 729, 730 (9th Cir.1984).

■ The interpretation of a statute begins with its plain language. *Lynch v. Rank*, 747 F.2d 528, 531 (9th Cir.1984); *Donovan v. Southern California Gas Co.*, 715 F.2d 1405, 1407 (9th Cir.1983). If the language of the statute is ambiguous, we then look to congressional intent. *See id.; Green v. Commissioner*, 707 F.2d 404, 405 (9th Cir.1983). We must not hinge our interpretation of a statute upon a single word or phrase but rather look to the statute as a whole, as well as its object and policies. *See Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962) (must examine provisions of the whole law not single sentence or word); *Green*, 707 F.2d at 405 (court should strive to interpret one section of a statute consistently with the language of other sections and the statute as a whole). Furthermore, in construing a statute we are duty bound to "consider time and circumstances surrounding the enactment as well as the object to be accomplished by it." *Callejas*, 750 F.2d at 731.

### 1. *Plain Language*

Both sides maintain that the plain language of section 1396p(c)(2)(B) supports their respective interpretations of the statute.

The district court adopted the plaintiffs' interpretation. It found significance in Congress' selection of the word "payable" rather than the word "paid" in 42 U.S.C. § 1396p(c)(2)(B)(ii)(I) and (II). 581 F.Supp. at 186. According to the district court, and to the plaintiff class, the word "payable" indicates that the period of ineligibility must be based on the average reimbursement rates a state has determined to be appropriate, which includes both the state's share and the recipient's share. *Id.*

The interpretation of the word "payable" by the district court is not an unreasonable one, but we believe that such an interpretation is not compelled in the face of other equally plausible explanations. We believe the proper meaning of the word "payable" depends upon its context. Here, the word is modified by the purpose of the payment—"payable ... *as medical assistance.*" The term "medical assistance" has a different meaning than "medical cost." Section 1396p(c) plainly makes "medical assistance" available only to "individuals," not to institutional providers. The services provided by such institutions are characterized as the "costs of medical care." 42 U.S.C. § 1396(c)(2)(B)(i). This analysis suggests that the state, on the average, pays $1,000 as "medical assistance" to beneficiaries. The $350 amount paid by the beneficiary can hardly be characterized as "medical assistance" to that beneficiary so as to justify the characterization of the entire amount of $1,350 as "medical assistance."

The varying plausible interpretations that might be given the term "payable" in this statute underscore the ambiguities in the federal statute's plain language. We therefore examine the statute's legislative history in order to ascertain the true intent of Congress.

### 2. *Legislative History*

The provision at issue in this litigation originated in a Senate Finance Committee amendment to HR 4961. *See* S.Rep. No. 494, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong. & Ad.News 781, 814 [hereinafter S.Rep. No. 494]. The Senate

Finance Committee noted that under the existing law, ownership of a home by a Medicaid applicant generally would not defeat the applicant's eligibility for Medicaid benefits. *Id.* The committee also noted that the home was specifically excluded from the federal transfer of assets statute. *Id.* This state of affairs, noted the committee, made it possible for a person "who anticipated needing nursing home care to give his/her home to a family member without fear of losing or being denied Medicaid eligibility." *Id.* Moreover, through such a transfer, the prospective applicant was assured that the home would not be subject to any recovery action by the state upon his or her death. *Id.*

The amendment proposed by the Senate Finance Committee authorized states to deny Medicaid eligibility temporarily, with certain exceptions, to patients in medical institutions who disposed of their home for less than fair market value at any time during or after the 24–month period immediately prior to admission to a skilled nursing facility or other medical institution. *Id.* Under the proposed Senate Finance Committee amendment, states could deny eligibility "for medical assistance" to all such individuals: (1) for a period bearing a reasonable relationship to the uncompensated value of the home, *or* (2) "for a period of at least 24 months, and (at State option) that all such individuals disposing of a home whose value exceeds the maximum amount payable under the State plan as medical assistance for 24 months of care in a skilled nursing facility shall be ineligible for a longer period which bears a reasonable relationship to the uncompensated value of the home." 128 Cong.Rec.S. 8586 (daily ed., July 19, 1982).

In explaining the purpose of this amendment, the Senate Committee stated:

The amendment intends to assure that all of the resources available to an institutionalized individual, including equity in a home, which are not needed for support of a spouse or dependent children will be used to defray the costs of supporting the individual in the institu-

tion. In doing so, it seeks to balance government's medicaid costs against the individual's need to have the home available in the event discharge from the institution becomes feasible.

S.Rep. No. 494 at 814.

The committee further noted that the proposed amendment "would facilitate States' efforts to recover medical assistance costs from [recipients' homes or income-producing real property] and to assure that all resources available to an individual will be used to defray the public costs of supporting that individual in a long-term medical institution." *Id.*

The Senate Finance Committee carved out exceptions for applicants who: (1) reasonably expected to be discharged from the medical institution and returned home; (2) demonstrated that he or she intended to obtain fair market value or other consideration in exchange for their home; or (3) transferred title to a spouse or a minor or handicapped child. *Id.* at 814. Waivers could also be granted by the state where undue hardship would result from imposition of a disqualification period. *Id.*

The House Committee provision was similar to the proposed Senate amendment except that the House's provision would apply to transfers for less than fair market value within 24 months prior to *application* for Medicaid benefits. *See* H.Conf. Rep. No. 760, 97 Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong. & Ad.News 1190, 1218. The House Committee proposal also allowed "states to deny Medicaid coverage for a period computed in a manner such that the cost of the services that would otherwise be provided to the individual during this period bears a reasonable relationship to the amount of the uncompensated value of the home." *Id.*

Under the conference agreement the period of ineligibility was set at 24 months from the date of the transfer of the home for less than fair market value. In addition, states were allowed to provide for shorter or longer periods of ineligibility depending on the uncompensated value of the home in relation to the cost of 24

months of Medicaid benefits. *Id.* The conference agreement specified that, in all cases, the period of ineligibility "must be related to the uncompensated value of the home, based upon the beneficiary's equity, and the cost of medicaid benefits." *Id.* The conference agreement also adopted the Senate Finance Committee's proposal of allowing states to waive the ineligibility period in cases of undue hardship.

The statute's legislative history does not not provide direct evidence of the intent of Congress with respect to its meaning of the word "payable" as used in section 1396p(c)(2)(B). However, this same history makes the overall objective of Congress unmistakably clear. Congress intended to depart from the past policy of excluding the home as a resource for purposes of determining Medicaid eligibility and to establish a disincentive to the transferring of homes for less than fair market value by allowing states to establish a period of ineligibility where such a transfer had occurred. These objectives were achieved in the context of enacting the Tax Equity and Fiscal Responsibility Act of 1982, *see* S.Rep. No. 494, the central purpose of which was to reduce budget outlays as a partial response to the federal deficit. *See id.* at 836.

The amendment proposed and adopted as the federal transfer of assets rule contributed to TEFRA'S central purpose by requiring greater patient participation in the overall cost of medical care, and, thereby reducing government outlays.

We believe that in enacting section 1396p(c)(2)(B), Congress sought to reduce budget outlays and to create a strong disincentive to the transfer of homes for less than fair market value. Proposed Or.Admin.R. 461–04–070(6)(e) fully comports with these objectives. By pegging the period of ineligibility to the average amount the state actually pays for medical services to Medicaid recipients, government moneys are spread the furthest. A longer ineligibility period results through such a computation; a longer ineligibility period creates a stronger disincentive to the transfer of a home for less than fair market value.

To interpret the ambiguous statutory language as found in section 1396p(c)(2)(B) as urged by the plaintiff class could produce consequences which are contrary to the goals Congress intended to achieve by the legislation. We do not accept the interpretation of the plaintiff class and the district court. To do so would disregard the circumstances surrounding the enactment of section 1396p(c)(2)(B), as well as the objectives it was intended to accomplish. *See Callejas v. McMahon* 750 F.2d at 731.

The plaintiffs contend the interpretation we adopt is punitive against individuals who transferred their home with no intent to cheat the state because they may face a longer period of ineligibility than someone who sold his home at fair market value and "spends down" the proceeds to eligibility levels. In light of the various exceptions to section 1396p(c)(2)(B)(i) and (ii), which Congress enumerated in section 1396p(c)(2)(B)(iii), we are satisfied that our interpretation of section 1396p(c)(2)(B) is not punitive. Our interpretation more nearly achieves what Congress intended by enacting § 1396p(c)(2)(B)—that all available resources of an applicant will be used to defray the cost of medical services and to deter individuals from circumventing this requirement by transferring their home for less than fair market value. If plaintiffs regard the decision of Congress to be unfair, they must seek relief from the legislative branch.

## CONCLUSION

In summary, although the plain language and legislative history are inconclusive with respect to the method of calculating the period of ineligibility authorized under section 1396p(c)(2)(B), they clearly reflect Congress' intent to depart from its past practice of excluding an applicant's home when computing Medicaid eligibility and to allow states to establish a period of ineligibility in specified circumstances where an applicant disposes of his or her home for less than fair market value. The time and circumstances surrounding the

enactment of section 1396p(c) and its objectives convince us that proposed Or.Admin.R. 461–04–070(6)(e) is consistent with the federal statute.

Accordingly, the district court's judgment is reversed. The case is remanded to the district court for a proper adjustment of the award of attorneys fees to the plaintiff class.

REVERSED and REMANDED.