John JOHNSON, Plaintiff,

v.

**TOWN OF TRAIL CREEK,**
**et al., Defendants.**

**No. S90–277 (RLM).**

United States District Court,
N.D. Indiana,
South Bend Division.

July 22, 1991.

272

Ivan E. Bodensteiner, Valparaiso, Ind., for plaintiff.

Scott H. Duerring, Michigan City, Ind., for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

The defendants' motion to dismiss requires the court to determine whether an alleged violation of the Consumer Credit Protection Act, 15 U.S.C. § 1674(a), can form the basis for a claim under 42 U.S.C. § 1983, and whether a Consumer Credit Protection Act violation occurs if an employer discharges an employee due to the prospect of a wage garnishment order, but before any wages have been deducted from the employee's paycheck. The parties fully briefed the issues and came before the court for a hearing on July 19, 1991. For the reasons that follow, the court finds both questions should be answered affirmatively and concludes that the defendants' motion should be denied.

### I.

John Johnson alleges that the Town of Trail Creek, Dan Tompkins, and John Kohler violated his rights under the Consumer Credit Protection Act ("CCPA"), 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution. The court has jurisdiction pursuant to 28 U.S.C. § 1343.

For purposes of a motion to dismiss for failure to state a claim upon which relief can be granted, the court accepts the complaint's factual allegations as true. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Dismissal is proper only if it appears beyond doubt that

the plaintiff can prove no set of facts that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

Mr. Johnson, a laborer with the Trail Creek Street Department, was discharged in August, 1989 from his employment with Trail Creek. About two days before his discharge, Trail Creek (through its agents) received a "Verified Motion in Proceedings Supplementary" and an order issued by the LaPorte Superior Court in the case of *McDaniel v. Johnson*, Cause No. 46D01–8808–CP–296. The verified motion included the following statement:

> That plaintiff [Garvin W. McDaniel] is the owner of a judgment against the defendant [John Johnson] recovered on the 2nd day of November, 1988, upon which there remains an unpaid balance in the sum of $531.56, plus costs and interest, and has no cause to believe that levy of execution against the defendant will satisfy the judgment.

> That Trail Creek Street Department, the garnishee-defendant herein, has or will have an obligation owing to the defendant subject to proceedings supplemental.

Mr. Johnson asserts that he was discharged from employment because Trail Creek received the verified motion, and the discharge violated 15 U.S.C. § 1674 and the Fourteenth Amendment. At the time of Mr. Johnson's discharge, defendant Dan Tompkins was the president of the Trail Creek Town Council and defendant John Kohler was a superintendent of the town's street department. Mr. Johnson accuses Mr. Tompkins and Mr. Kohler of violating both 15 U.S.C. § 1674 and the Fourteenth Amendment by their participation in Trail Creek's decision to discharge.

## II.

The defendants seek dismissal on four separate grounds: (1) the CCPA does not provide for a private civil remedy for discharge of employment due to wage garnishment; (2) 42 U.S.C. § 1983 does not provide for a separate civil remedy for violations of the Consumer Credit Protection Act; (3) employees of a municipality acting within the scope of their employment cannot be held liable for alleged violations resulting from the performance of discretionary functions under the Indiana Tort Claims Act, IND.CODE 34–4–16.5–3(6); and (4) the receipt of a "Verified Motion in Proceedings Supplementary" does not trigger a violation of discharge under 15 U.S.C. § 1674(a).

### A.

Mr. Johnson's suit is not a private action under the CCPA. He contends that the CCPA provides him with a federally created property interest that was taken from him without due process of law. He brings his claim solely under 42 U.S.C. § 1983; the CCPA becomes pertinent only insofar as it forms the source for the property action of which Mr. Johnson claims the defendants deprived him. Accordingly, the court need not revisit the holdings of the several courts that have concluded that the CCPA provides no private right of action. *Le Vick v. Skaggs Companies, Inc.*, 701 F.2d 777 (9th Cir.1983); *McCabe v. Eureka*, 664 F.2d 680 (8th Cir.1981); *Simpson v. Sperry Rand Corp.*, 488 F.2d 450 (5th Cir. 1973); *Nunn v. Paducah*, 367 F.Supp. 957 (W.D.Ky.1973); *Oldham v. Oldham*, 337 F.Supp. 1039 (N.D.Iowa 1972); *Smith v. Cotton Bros. Baking Co., Inc.*, 609 F.2d 738 (5th Cir.), *cert. denied*, 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980); *but see Stewart v. Travelers Corp.*, 503 F.2d 108 (9th Cir.1974); *Maple v. Citizens National Bank & Trust Co.*, 437 F.Supp. 66 (W.D.Okla.1977); *Ellis v. Glover & Gardner Construction Co.*, 562 F.Supp. 1054 (M.D.Tenn.1983).

### B.

With two exceptions, § 1983 provides a remedy for violations of federal statutes. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). A plaintiff alleging a federal statutory violation cannot sue under § 1983 if the statute creates no enforceable rights, privileges, or immunities, or if "Congress has foreclosed such enforcement of the statute in the en-

actment itself." *Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987). The defendants contend that both exceptions apply here: 15 U.S.C. § 1674(a) creates no right, privilege, or immunity; and Congress has foreclosed a remedy under § 1983. On the second point, the defendants bear the burden of demonstrating foreclosure. *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989); *Artist M. v. Johnson,* 917 F.2d 980 (7th Cir.1990), *cert. granted* —— U.S. ——, 111 S.Ct. 2008, 114 L.Ed.2d 97 (1991).

The court disagrees with Trail Creek's contention that the CCPA creates no right. The CCPA does far more than merely "express a congressional preference for certain kinds of treatment." *Cf. Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 19, 101 S.Ct. 1531, 1540–41, 67 L.Ed.2d 694 (1981). The plaintiff's interest in retaining employment despite a single garnishment is not "too vague and amorphous" to be "beyond the competence of the judiciary to enforce" and, as is discussed more fully below, Congress intended 15 U.S.C. § 1674(a) to benefit those discharged for a single garnishment. *Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. at 430–432, 107 S.Ct. at 773–775. Even if the CCPA affords no private right of action, it creates a right to be enforced by the Secretary of Labor.

The court also disagrees with Trail Creek's contention that Congress has foreclosed the use of § 1983 to enforce that right. Trail Creek and its officials cite two cases in support of the proposition that a violation of the CCPA cannot support an action under 42 U.S.C. § 1983. *Burris v. Mahaney,* 716 F.Supp. 1051, 1058 (M.D.Tenn.1989); *Follette v. Vitanza,* 658 F.Supp. 492, 499–500 (N.D.N.Y.1987). In one of those cases, the court succinctly explained its ruling:

> If there is no implied private cause of action for a violation of 15 U.S.C. § 1673, it is also only logical that there can be no section 1983 action for violation of 15 U.S.C. § 1673. The basic reason the courts have concluded that there is no

implied private cause of action is that Congress apparently intended the accompanying administrative remedy to be the exclusive remedy for a section 1983 action for violating the garnishment provision would simply be an avoidance of the congressional intent that the administrative remedy be exclusive. Furthermore, a fourteenth amendment violation requires a deprivation of a property (or life or liberty) interest. If there was no private right to enforce section 1983 outside of the administrative remedy, then the plaintiff cannot complain that she was deprived of a substantial federal right created by 15 U.S.C. § 1673.

*Burris v. Mahaney,* 716 F.Supp. at 1058. The *Burris* court, however, was answering what now can be seen as having been the wrong question.

In *Wilder v. Virginia Hospital Ass'n,* —— U.S. ——, 110 S.Ct. 2510, 2517 n. 9, 110 L.Ed.2d 455 (1990), the Supreme Court explained that whether a given federal statute creates an implied right of action is an entirely different question from whether § 1983 provides a right of action for violation of that federal statute. The § 1983 analysis inquires whether "Congress has affirmatively withdrawn the remedy." *Id.* Applying this test, the court must disagree with the *Burris* holding. An affirmative withdrawal of the remedy of § 1983 cannot be implied solely from an inability to imply a private remedy in the CCPA.

The *Follette* court employed a more appropriate analysis and concluded that "the absence of any reference to a private right of action in Subchapter II when viewed in light of congress' detailed provision of such a right under Part B of Subchapter I is ... an implicit manifestation of an intent to deny such a remedy." *Follette v. Vitanza,* 658 F.Supp. at 500. District judges of this circuit may not, however, treat the opinions of other district judges as binding precedent. *TMF Tool Co., Inc. v. Muller,* 913 F.2d 1185, 1191 (7th Cir. 1990). The opinions of other district judges are entitled to whatever weight their intrinsic reasoning warrants. *Colby v. J.C. Pen-*

*ney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir.1987). With due respect to the *Follette* court, and recognizing the greater guidance now available from the Supreme Court than when *Follette* was decided, the court disagrees with the *Follette* reasoning.

■ To be said to have specifically foreclosed a remedy under § 1983, Congress must have provided a comprehensive enforcement mechanism for protection of the right at issue. *Golden State Transit Corp. v. City of Los Angeles*, 110 S.Ct. at 448; *Smith v. Robinson*, 468 U.S. 992, 1005 n. 9, 104 S.Ct. 3457, 3464 n. 9, 82 L.Ed.2d 746 (1984). "The availability of administrative mechanisms to protect plaintiff's interests is not necessarily sufficient to demonstrate that Congress intended to foreclose a § 1983 remedy." *Golden State Transit Corp. v. City of Los Angeles*, 110 S.Ct. at 448–449. The defendants are correct that § 1674(a) is the only provision of the CCPA that defers enforcement to the Secretary of Labor, but the CCPA does no more by way of foreclosure. No enforcement mechanism whatsoever is set forth; the CCPA simply directs claimants to the Secretary of Labor. This falls far short of the sort of comprehensive enforcement mechanism required to find Congressional foreclosure of enforcement under § 1983.

The court concludes that the defendants have failed to meet their burden of establishing the applicability of this exception to the general rule that a plaintiff may sue under § 1983 for violation of a federal statute.

### C.

■ The Indiana Tort Claims Act cannot shield the town or its officials from liability under § 1983, even if the town and its officials could not be liable under state law. *See Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); *see also Kellogg v. City of Gary*, 562 N.E.2d 685 (Ind. 1990). Accordingly, it is immaterial, in a suit under § 1983, whether the defendants would be immune from suit in state court on a state law theory.

### D.

■ Finally, the defendants contend that the complaint alleges no CCPA violation because Mr. Johnson's wages were not actually being withheld at the time of his discharge. They contend, in effect, that an employer cannot violate the CCPA until it actually has taken money from the employee's paycheck. Mr. Johnson argues that such a construction would flaunt Congressional intent. The court agrees.

15 U.S.C. § 1674(a) provides, "No employer may discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness." 15 U.S.C. § 1672(c) defines "garnishment" as meaning "any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt."

Indiana's procedure for garnishment of wages consists of two steps. First, upon the filing of a verified motion by the judgment creditor, the employer is required to answer interrogatories or appear at a hearing to disclose whether it has an obligation owing to the judgment debtor subject to proceedings supplemental. IND.TR.R. 69(E)(4). IND.CODE 34–1–11–21 provides that, "From the day of the service of the summons, the garnishee shall be accountable to the plaintiff in the action for the amount of money, property or credits in his hands, or due and owing from him to the defendant." If the employer is found to have an obligation owing to the judgment debtor-employee, the court may order the payment of obligation to the judgment-creditor. IND.CODE 34–1–11–30. Thus, the judgment creditor's filing of the verified motion and the state court's order to Trail Creek were part of a garnishment: legal procedure through which Mr. Johnson's earnings were required to be withheld for a debt. 15 U.S.C. § 1672(c).

Trail Creek, however, points to *Brennan v. Kroger Co.*, 513 F.2d 961 (7th Cir.1975), as authority for a different analysis. 15 U.S.C. § 1674(a) prohibits discharge for garnishment for any one indebtedness, impliedly allowing discharge for multiple garnishments for multiple indebtedness. In

*Brennan*, the employee already was subject to one garnishment order, for which wages were being deducted, when another order arrived. Because her paycheck already was occupied by the first order, the employer never withheld any of her paycheck on the second order; instead, the employer fired her. Focusing on the "have been subjected to garnishment" phrase in § 1674(a), the Seventh Circuit held that she could not have been fired by reason that her earnings had been subjected to a second garnishment, because the second garnishment had not yet affected her earnings.

■ *Brennan*, however, did not address when the protection of § 1674(a) begins; it looked to the time the protection ends. Neither the parties nor the court have found a case that examines the event that triggers the protection of § 1674(a). In any statutory interpretation case, the court's ultimate goal is to "discern the will of Congress and to apply it to the particular facts of the case." *Illinois Dept. of Public Aid v. Sullivan*, 919 F.2d 428, 431 (7th Cir.1990). To accomplish that goal, courts employ a two-step methodology. First, the court examines the plain language of the statute itself. If that language is unambiguous, it should be applied as read. When the statutory language is ambiguous on its face, however, the court should look to congressional intent in adopting the provision, *Interstate Commerce Com'n v. Mr. B's Services, Ltd.*, 934 F.2d 117 (7th Cir.1991); *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir.1990), or to interpretations by the administrative agency charged with the care of the statute, *Ft. Stewart Schools v. Federal Labor Relations Authority*, 495 U.S. 641, 110 S.Ct. 2043, 2046, 109 L.Ed.2d 659 (1990).

The *Brennan* court reached its conclusion only after reference to legislative history and administrative interpretation of the statute. In light of the principles of statutory construction recited above, the court's reference to such materials indicates that § 1674(a) is ambiguous. The *Brennan* court found that the legislative history revealed "that Congress, in enacting Title III, intended to protect employees from the adverse effects of garnishment proceedings and discharges based thereon." 513 F.2d at 964. Construing the statute as Trail Creek requests would not further that intent.

Given Congressional intent, *Brennan* need not, and should not, be extended to apply to the different factual scenario presented here. The appropriate construction of the statute, then, consistent with *Brennan*, the statute's language, and Congressional intent, is to find employees protected from discharge from the time garnishment proceedings are first commenced through the time wages are withheld on a second garnishment. A contrary reading would reward the employer who fires an employee at the first sign of garnishment, while punishing those who allow the employee to continue to work until wages actually are withheld pursuant to a first garnishment order for a single indebtedness. Such a reading would be inconsistent with the language of § 1672(c) and would confound Congressional intent.

### III.

If the defendants discharged Mr. Johnson by reason of the garnishment proceedings embodied by the LaPorte Superior Court's order, they may be found to have deprived Mr. Johnson of his rights under 15 U.S.C. § 1674(a). An action may be maintained for that deprivation under 42 U.S.C. § 1983. Indiana's Tort Claims Act provides the defendants with no immunity from liability under § 1983.

Accordingly, the court now DENIES the defendants' motion to dismiss for failure to state a claim upon which relief can be granted.

SO ORDERED.