IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 1, 2018

## JULIE ANN KENDLE v. MATTHEW DAVIS KENDLE ET AL.

**Appeal from the Circuit Court for Wilson County**
**No. 5774     Clara W. Byrd, Judge**

_____

### No. M2017-02434-COA-R3-CV

_____

This appeal arises from an Order for Conditional Judgment to enforce a routine garnishment of an obligor's wages. The dispositive issue is whether an employer of an obligor has an affirmative duty to determine whether the aggregate amount of wages to be garnished from an obligor's multiple employers exceeds the aggregate disposable earnings limits provided in Tenn. Code Ann. § 26-2-106. An employer of the obligor, Blue Shield EMS ("Blue Shield"), was served with a garnishment while a pre-existing wage assignment of the obligor's wages from another employer was still in effect. Although none of the obligor's wages from Blue Shield had been previously garnished, Blue Shield filed an answer to the garnishment stating, "We cannot process any deductions from [the obligor's] paycheck at this time due to his total income already being garnished greater than 25%." Upon motion of the obligor's former wife for a conditional judgment, the trial court found that "Blue Shield did not have a valid legal reason for failing to withhold twenty-five percent (25%) of the employee's net wages" and ordered Blue Shield to pay into the court the wages that should have been garnished and to honor the garnishment going forward until the judgment was satisfied. Having determined that an employer has no duty to consider the aggregate effect of garnishments served on other employers when answering a garnishment, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which CHARLES D. SUSANO JR. and BRANDON O. GIBSON, JJ., joined.

Andrew Tyler Whitaker, Sr. and William K. Cather, Lebanon, Tennessee, for the appellant, Matthew Davis Kendle.

Chadwick Jackson Hayes and Blake Lawrence, Lebanon, Tennessee, for the appellee, Julie Ann Kendle.

**OPINION**

Pursuant to a Final Decree of Divorce, the appellant, Matthew Davis Kendle ("Father"), was ordered to pay spousal support to his former wife, Julie Ann Kendle ("Mother"), and child support for the benefit of their minor child. Since the divorce, Father incurred monetary judgments for failure to pay child support and spousal support and for attorney's fees related to the enforcement of a child support order.

In August 2017, Mother served a garnishment on Blue Shield to satisfy a judgment against Father for attorney's fees incurred due to his failure to pay child support. Blue Shield responded to the garnishment in a letter to the circuit court clerk stating, "We cannot process any deductions from [Father's] paycheck at this time due to his total income already being garnished greater than 25%." Although it is not mentioned in Blue Shield's letter to the clerk, a pre-existing wage assignment of twenty-six percent (26%) on Father's disposable pay from his primary employer, Wilson County Emergency Management Agency ("WEMA"), was in effect.

Unaware of Blue Shield's letter to the clerk, Mother filed a Motion for Conditional Judgment against Blue Shield for failing to honor the garnishment. Blue Shield's attorney filed a response, contending his client sent a letter to the circuit court clerk after receiving the garnishment and restating that Father's "aggregate income to be garnished exceed[ed] the statutory amount of 25%."

At the hearing on the motion for the conditional judgment, Father and Blue Shield argued that Blue Shield was precluded from garnishing Father's wages because of the pre-existing wage assignment of approximately 26%, pursuant to Tenn. Code Ann. § 36-5-501, of his earnings from WEMA. They also argued, relying on Tenn. Code Ann. § 26-2-224(a), that the garnishment could not attach to his earnings from Blue Shield concurrently while the pre-existing wage assignment with WEMA remained in effect.[1]

To support this reasoning, Blue Shield represented to the trial court that it used a business form entitled "Administrative Wage Garnishment Calculator" which it obtained from the United States Department of the Treasury.[2] Furthermore, Blue Shield and Father

---

[1] Tenn. Code Ann. § 26-2-224(a) reads: "Notwithstanding any other provision of law or rule to the contrary, a writ of garnishment that is filed later in time than another such writ, and which deducts the maximum amount allowable by law from the debtor's wages, shall not run concurrently with the earlier filed writ with regard to the six-month time limit prescribed in § 26-2-214. Such later filed writ of garnishment shall not begin to run until the earlier filed writ's judgment has been satisfied, such earlier filed writ has expired, or such earlier filed writ has been stayed by installment motion as prescribed in § 26-2-216."

[2] The relevance or applicability, if any, of the form entitled "Administrative Wage Garnishment Calculator" to garnishments of wages pursuant to Tenn. Code Ann. §§ 26-2-214, -216, and -224, and/or

(continued…)

argued that an employer who uses this form is first to calculate the maximum amount of the employee's earnings subject to garnishment under Tenn. Code Ann. § 26-2-106, which is the lesser of 25% of the worker's weekly disposable earnings or the amount by which the disposable earnings for that week exceeds thirty (30) times the federal minimum hourly wage at the time the earnings are due. They further claimed that the employer is then to subtract from this amount "any amounts withheld under other wage withholding orders with priority" in order to determine the amount the employer should withhold. According to Blue Shield's calculations, 25% of Father's Blue Shield wages (paid biweekly) would be $474.07. Father maintained that WEMA was already withholding $491.99 from his biweekly earnings from that job. Because $474.99 minus $491.99 yielded a negative number, Father and Blue Shield contended that Blue Shield could not withhold any of Father's Blue Shield earnings.

Mother disputes the applicability and methodology of the "Administrative Wage Garnishment Calculator." She also contends that the 50% limit under Tenn. Code Ann. § 36-5-501(a)(1), not the 25% limit under Tenn. Code Ann. § 26-2-106, applies because the judgment to be satisfied by the Blue Shield garnishment regarded a child support obligation.

Following the hearing and after finding that "[w]hatever is being deducted [from Father's wages at WEMA] pursuant to 36-5-501 has nothing to do with this entity of Blue Shield Ambulance," the trial court entered an order stating:

> 2. [T]he Court finds that Blue Shield EMS did not have a valid legal reason for failing to withhold twenty-five percent (25%) of the employee's net wages, after taxes, social security and Medicare deductions; therefore, Blue Shield EMS shall be required to immediately pay into the Circuit Court Clerk's office the amount of wages that should have been garnished from the employee's wages since the garnishment was served upon them on July 31, 2017. That amount is One Thousand Two Hundred Sixty and 88/100 Dollars ($1,260.88) through November 13, 2017 plus any court costs accrued in this matter;

. . .

---

Tenn. Code Ann. § 36-5-501 is not established by any citation to authority in the record. The form "Administrative Wage Garnishment Calculator" is provided by the "Bureau of the Fiscal Service," which identifies the U.S. Department of the Treasury as its parent agency. *See* https://www.usa.gov/federal-agencies/bureau-of-the-fiscal-service. The Bureau of the Fiscal Service states that it "manages all federal payments and collections, and provides government-wide accounting and reporting services," including "fiscal service forms." *Id*.

4. That Blue Shield EMS shall be required to honor the garnishment going forward, beginning with the employee's next pay period and shall be required to deduct twenty-five percent (25%) of the employee's net wages, after taxes, social security and Medicare deductions, from each of the employee's paychecks and submit them to the Circuit Court Clerk's office until the judgment has been paid in full.. . .

This appeal followed.

## ISSUES

Father and Mother each raise one issue on appeal. Blue Shield does not challenge the trial court's order and is not a party to this appeal.

Father's issue, as we have rephrased it, is whether a garnishee has an affirmative duty to consider all wages the obligor earns from other employers, as well as the amount of wages being withheld by those employers, to determine whether its garnishment will result in withholdings that exceed the aggregate disposable earnings limits provided in Tenn. Code Ann. § 26-2-106.[3] For her part, Mother contends the trial court erred by limiting the garnishment to 25% of Father's disposable income from Blue Shield instead of 50%, the maximum permitted under Tenn. Code Ann. § 36-5-501(a)(1), to satisfy a judgment pertaining to child support.

## STANDARD OF REVIEW

The issues on appeal require us to construe a statute. Statutory interpretation is a matter of law, which this court reviews de novo with no presumption of correctness accorded to the trial court's decision. *Hayes v. Gibson County*, 288 S.W.3d 334, 337 (Tenn. 2009).

---

[3] Father's issue, as stated in his brief, reads:

IN DETERMINING WHETHER A GARNISHEE SHOULD OR SHOULD NOT WITHOLD THE DEMANDED AMOUNT FROM THE OBLIGOR EMPLOYEE'S WAGES PURSUANT TO A GARNISHMENT, DOES THE GARNISHMENT LIMIT OF 25% OF "AGGREGATE DISPOSABLE EARNINGS" PROVIDED IN TCA § 26-2-106 REQUIRE FACTORING IN A WAGE ASSIGNMENT FROM THE OBLIGOR'S WAGES FROM A SEPARATE EMPLOYER OR JUST OTHER WAGE WITHHOLDING ORDERS ALREADY BEING ENFORCED AGAINST THE OBLIGOR'S WAGES FROM THE GARNISHEED EMPLOYER ITSELF?

ANALYSIS

When interpreting a statute, our primary task is to ascertain and carry out the General Assembly's intent. *Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004). If the statutory language is clear and unambiguous, we consider "the natural and ordinary meaning of the statutory language," and in doing so, we try to avoid a forced interpretation that would broaden or restrict the statute's meaning. *Id*. (quoting *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000)). However, as our Supreme Court explained:

> When courts are attempting to resolve a statutory ambiguity, the rules of statutory construction authorize them to consider matters beyond the text of the statute being construed. The courts may consider, among other things, public policy, historical facts preceding or contemporaneous with the enactment of the statute being construed, and the background and purpose of the statute. The courts may also consider earlier versions of the statute, the caption of the act, the legislative history of the statute and the entire statutory scheme in which the statute appears.

*Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 527-28 (Tenn. 2010).

I. DUTIES OF AN EMPLOYER

Contrary to Father's contentions, Tennessee's statutory scheme does not place an affirmative duty on an employer to consider any wages the obligor employee earns from other employers or the amount of wages being withheld by those employers. This is significant because garnishment is purely a statutory proceeding and is in derogation of the common law. *General Truck Sales, Inc. v. Simmons*, 343 S.W.2d 884, 885 (Tenn. 1961); *Third Nat'l Bank v. Bradley*, No. 85-312-II, 1986 WL 5548, at *2 (Tenn. Ct. App. May 14, 1986). Moreover, as this court noted years ago while identifying the duties of the garnishee, "[o]ur statutes creating the [garnishment] proceeding and giving it direction are found in T.C.A. §§ 26-2-201 *et seq*." *Bradley*, 1986 WL 5548, at *2. Thus, a garnishee has no duty unless such a duty is set forth in Tenn. Code Ann. §§ 26-2-201 to -410 or case law interpreting the statutory scheme.[4]

---

[4] It should additionally be noted that Rule 69.05 of the Tennessee Rules of Civil Procedure provides in pertinent part:

> (3) Garnishee's Duty Upon Service. The garnishee by the next business day after service shall ascertain whether the garnishee holds property of the debtor. If so, the garnishee shall mail one copy of the writ of garnishment with the notice to the last known address of the judgment debtor. Where the garnishee is a financial institution, the balance in the judgment debtor's accounts on the night of the service date is the amount subject to that garnishment writ.

As for the duties of garnishees in general, we begin by noting that a garnishee is only liable for the property, debts, and effects of the obligor that are in the possession or under the control of the garnishee. This is evident from the plain reading of Tenn. Code Ann. § 26-2-202:

> All property, debts and effects of the defendant **in the possession or under the control of the garnishee** shall be liable to satisfy the plaintiff's judgment, from the service of the notice, or from the time they came into the plaintiff's hands, if acquired subsequent to the service of notice, and before judgment.

(Emphasis added). Thus, it is what is in the possession or under the control of the garnishee that is subject to the garnishment as distinguished from what may be in the possession or under the control of another. *Id*. The rationale of the "in possession and under the control of the garnishee" limitation is also readily evident from our ruling in *Erlanger Med. Ctr. v. Strong*, 382 S.W.3d 349, 353 (Tenn. Ct. App. 2012). In *Erlanger*, we held that tips received by restaurant servers directly from customers "are not to be included in the calculation of disposable earnings for the purposes of garnishment," because they do not pass from employer to employee. *Id*. Stated another way, tips are not to be included because they are not in the possession or control of the employer. *See* Tenn. Code Ann. § 26-2-202.

As for the specific duties of a garnishee who is the employer of the obligor, those duties are clearly stated in Tenn. Code Ann. § 26-2-214, the relevant provisions of which read as follows:

> (a) Upon the garnishment of earnings due from a garnishee, the garnishee shall:
>
> > (1) Pay the judgment debtor the amount of such debtor's exempt earnings;
> >
> > (2) Submit as a part of the judgment debtor's answer to the garnishment a statement of the judgment debtor's dependent children under sixteen (16) years of age who are residents of this state; and
> >
> > (3) Furnish the judgment debtor with a copy of the garnishment summons containing the notice of the judgment debtor's right to the exemptions from wage garnishment specified in federal law and in §§ 26-2-106 and 26-2-107 of the right to apply to the court for an order staying further

garnishment and allowing the judgment debtor to pay the judgment in installments, and of procedures the judgment debtor can follow to contest the garnishment.

(b)(1) To the extent of the amount due upon the judgment and costs, the garnishee shall hold, subject to the order of the court, any nonexempt earnings due or that subsequently become due. The judgment or balance due is a lien on earnings due at the time of the service of the execution. The lien shall continue as to subsequent earnings until the total amount due upon the judgment and costs is paid or satisfied, or until the expiration of the payment period immediately prior to six (6) calendar months after service of the execution, whichever occurs first. The lien on subsequent earnings shall terminate sooner if the relationship between judgment debtor and garnishee is terminated or if the underlying judgment is vacated or modified.

In addition to the duties of the employer of the obligor specified above, all garnishees may be required to file an answer under oath to the garnishment. Tenn. Code Ann. § 26-2-204(a). The information that the garnishee must provide in the answer to be filed with the issuing court within ten days includes:

> (1) Whether such garnishee is, or was at the time of the garnishment, indebted to the defendant; if so, how and to what amount;
>
> (2) Whether such garnishee had in possession or under such garnishee's control any property, debts, or effects belonging to the defendant, at the time of serving the notice, or has at the time of answering, or has had at any time between the date of service and the time of answering; if so, the kind and amount;
>
> (3) Whether there are, to such garnishee's knowledge and belief, any and what property, debts, and effects in the possession or under control of any other, and what, person;
>
> (4) Such other questions appearing on or attached to the original execution put to the garnishee by the court of the judgment creditor as may tend to elicit the information sought.

*Id.* This answer can be made "initially either in person or by filing a written answer." Tenn. Code Ann. § 26-2-204(b).

When ascertaining the wages of the obligor employee, as well as calculating the aggregate disposable earnings that are subject to garnishment, the garnishee employer is to make such determinations pursuant to Tenn. Code Ann. § 26-2-106, which states:

(a) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed:

(1)  Twenty-five percent (25%) of the disposable earnings for that week; or

(2)  The amount by which the disposable earnings for that week exceed thirty (30) times the federal minimum hourly wage at the time the earnings for any pay period become due and payable, whichever is less.

(b) In the case of earnings for any pay period other than a week, an equivalent amount shall be in effect.

(c)  The debtor shall pay the costs of any and all garnishments on each debt on which suit is brought.

As noted earlier, garnishment proceedings are purely statutory and "[o]ur statutes creating the [garnishment] proceeding and giving it direction are found in T.C.A. §§ 26-2-201 *et seq.*" *Bradley*, 1986 WL 5548, at *2. Neither the foregoing statutes nor any other provisions in Tenn. Code Ann. §§ 26-2-201 to -410 impose a duty on a garnishee employer to consider the effect of wage assignments or garnishments on the obligor's other employers.

It is also relevant that Tennessee's garnishment protocol under Tenn. Code Ann. § 26-2-106 is almost verbatim to the federal Consumer Credit Protection Act ("CCPA"), specifically 15 U.S.C. § 1673.[5] This close modeling is significant because the legislative

---

[5] 15 U.S. Code § 1673, Restriction on garnishment, provides:

(a) Maximum allowable garnishment. Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed
　　(1) 25 per centum of his disposable earnings for that week, or
　　(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of title 29 in effect at the time the earnings are payable, whichever is less. In the case of earnings for any pay period other than a week, the Secretary of Labor shall by

(continued…)

history of 15 U.S.C. § 1673 and the CCPA, as a whole, reveal that one of the principal goals of the legislation was to lessen the burden on employers when responding to garnishments while protecting the interests of individual debtors. *See Kokoszka v. Belford*, 417 U.S. 642, 650-51 (1974). These goals are evident from specific findings Congress made in the enactment of the CCPA. Under the section titled Disadvantages of Garnishments in 15 U.S.C. § 1671(a)(2), Congress made the finding that the garnishment of an employee's wages "frequently result[ed] in loss of employment." The reasons for such were explained by corporate representatives who testified in a congressional subcommittee hearing that "garnishment deductions from the wages of their employees was a heavy, unwanted administrative expense." *Brennan v. Kroger Co.*, 513 F.2d 961, 963 (7th Cir. 1975) (Citing 114 Cong. Rec. 1833 (1968)). Thus, one of the purposes behind the restrictions on garnishment was to address "the evils that befall [the employer-employee] relationship when wages are garnished." *Dunlop v. First Nat. Bank of Arizona,* 399 F. Supp. 855, 856 (D. Ariz. 1975).

What is most significant to the specific issue here is Congress recognized that overcomplicating the garnishment process would burden employers with unreasonable administrative demands. *See Brennan*, 513 F.2d at 964. The problem as recognized by Congress was that the administrative expenses and burdens provided employers with the incentive to remove the obligor employees from their payrolls. *Id.* This would obviously countervail another central purpose of the garnishment regulations: to protect the obligors' employment so that they may provide for themselves and their dependents. *Id*.

---

regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).

(b) Exceptions
[…]
(2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed—
(A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and
(B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week;
except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause (A) shall be deemed to be 55 per centum and the 60 per centum specified in clause (B) shall be deemed to be 65 per centum, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek.

For the foregoing reasons, and specifically because the statutory scheme found in Tenn. Code Ann. §§ 26-2-201 to -410 does not impose a duty on a garnishee employer to consider the effect of wage assignments or garnishments on the obligor's other employers, we conclude that no such duty exists. *See Bradley*, 1986 WL 5548, at *2. Therefore, we affirm the trial court's determination that "Blue Shield did not have a legal reason for failing to withhold twenty-five percent (25%) of the employee's net wages."

## II. TENN. CODE ANN. § 36-5-501(A)(1)

Mother argues the trial court erred by limiting the garnishment to 25% of Father's earnings from Blue Shield. Relying upon Tenn. Code Ann. § 36-5-501(a)(1), she contends the court was required to set the garnishment at 50% of his earnings. We have determined that Mother has misconstrued the 50% provision to constitute a minimum as distinguished from a maximum limitation.

Tenn. Code Ann. § 36-5-501(a)(1), the statute Mother relies on, states in pertinent part:

> For any order of child support issued, modified, or enforced on or after July 1, 1994, the court shall order an immediate assignment of the obligor's income, including, but not necessarily limited to: wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, profit sharing, interest, annuities, and other income due or to become due to the obligor. . . . The court's order, shall include an amount sufficient to satisfy an accumulated arrearage, if any, within a reasonable time. . . . Withholding **shall not exceed fifty percent (50%) of the employee's income** after FICA, withholding taxes, and a health insurance premium that covers the child, are deducted. . . .

Tenn. Code Ann. § 36-5-501(a)(1) (emphasis added).

A plain reading of the statute reveals that the trial court may withhold an amount up to but not to "exceed fifty percent (50%) of the employee's income" after a certain specified deduction. *Id.* However, contrary to Mother's contention, the statute does not mandate this percentage of withholding as a minimum. Instead, the court may order the withholding of an amount "sufficient to satisfy an accumulated arrearage, if any, within a reasonable time," provided that amount does not exceed the 50% limitation. *Id.* The record before us does not preponderate against the trial court's finding that a withholding

of 25% is sufficient to satisfy the child support judgment. Accordingly, we find no error with the trial court setting the withholding at 25%.[6]

### III. ATTORNEY'S FEES

Relying on Tenn. Code Ann. § 27-1-122, Mother requests that this court award her attorney's fees she incurred on appeal. The statute provides that when an appeal was frivolous or taken solely for delay, the appellate court may award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal. *Id*. We have determined this appeal was not frivolous and not taken solely for delay. Therefore, the request is respectfully denied.

### IN CONCLUSION

The judgment of the trial court is affirmed and costs of appeal are assessed against the Appellant, Matthew Davis Kendle.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[6] It is also relevant that an income wage assignment is not required under Tenn. Code Ann. § 36-5-501 "[i]f there is a written agreement by both parties that provides for alternative arrangements." Tenn. Code Ann. § 36-5-501(a)(2)(A)(ii). As this record reveals, the parties entered into a wage assignment agreement pursuant to which 26% of Father's income from WEMA is being withheld and which remains in effect.